{¶ 50} While I concur in the conclusion of the majority with respect to appellants' assignments of error, it appears that the majority opinion does not expressly address the specific focus of appellants' argument under their second assignment of error to the effect, "that there is neither a judicially nor legislatively expressed public policy in Ohio prohibiting a transsexual born in Ohio from changing the sex designation on his or her birth certificate or, for that matter, prohibiting a transsexual from marrying in his or her new sex," as it bears on the issue of full faith and credit. In re Ladrach; Gibson v.Bolner.
 {¶ 51} This writer is in accord with appellants' contention on this point. However, appellants' syllogism does not necessarily and automatically invoke the conclusion that ergo there is no public policy on this issue that can be gleaned from a penetrating analysis of the legislative history of the Ohio statutes that have established the criteria for the issuance of a marriage license. Although existing case law on the question in Ohio is, indeed, most sparse, vis-á-vis, Inre Ladrach; and while other limited judicial pronouncements are tangential, like In re Bicknell and Gajovski, they provide an important degree of relevance. When those authorities are read in conjunction with the pertinent statutory provisions, a predicate is provided to ascertain a definite public policy in Ohio that does not sanction and approve of transsexual marriage by one whose sexual identity is transformed from that of birth to the opposite gender by medical techniques to another individual of the opposite sexual label which condition is congenital in that regard.
 {¶ 52} I do believe the majority has provided that type of presentation in concluding that there is a discernable public policy on this subject in Ohio. Additionally, I share the Supreme Court of Kansas' sensitivity in Gardiner for those who feel most compelled to seek the opposite sexual gender.
 {¶ 53} I also agree with the majority, with the rationale inGardiner, and the Texas Littleton case that these precise issues fit more appropriately in the legislative rather than the judicial cauldron as to whether this policy should be stayed or changed.
 {¶ 54} In any event, the result reached by the majority remains the same even if Ohio's public policy determination is the product of inductive reasoning.